UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

LUIS MIGUEL JUAREZ,

                Petitioner,

    v.

CHAD WOLF, *et al.*,

                Respondents.

Case No. C20-1660-RJB-MLP

REPORT AND RECOMMENDATION

## I.    INTRODUCTION AND SUMMARY CONCLUSION

Petitioner Luis Juarez is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. He has filed a petition for writ of habeas corpus under 28 U.S.C. § 2241, through counsel, seeking to obtain release from detention or a bond hearing. (Dkt. # 1, Petition (Pet.); Dkt. # 1-2, Memorandum in Support of Petition (Mem.).) The Government has filed a return memorandum and motion to dismiss (dkt. # 14 (Mot.)) which is currently ripe for review. Petitioner has filed a brief in opposition to the Government's motion to dismiss (dkt. # 17

REPORT AND RECOMMENDATION
PAGE - 1

1  (Resp.)), and the Government has filed a reply in support of its motion (dkt. # 18 (Reply)).[1] The

2  Court also heard oral argument in this matter on April 14, 2021.

3      The Court, having considered the parties' briefs, the exhibits submitted in support

4  thereof, and the arguments presented at oral argument, concludes that the Government's motion

5  to dismiss and Petitioner's federal habeas petition should be granted in part and denied in part.

6  Specifically, the Court concludes that Petitioner's request for release should be denied but that

7  his request for a bond hearing should be granted.

8                **II.    BACKGROUND**

9      Petitioner, a native and citizen of Mexico, became a legal permanent resident of the

10 United States in February 1997. (Dkt. # 15, Declaration of Michelle R. Lambert (Lambert Decl.),

11 Ex. A; Dkt. # 16, Declaration of Justin Berg (Berg Decl.), ¶ 3.) In April 2015, Petitioner was

12 convicted in Idaho state court on charges of Possession of a Controlled Substance

13 (methamphetamine) and Delivery of a Controlled Substance (methamphetamine). (Lambert

14 Decl., Ex. B.) He was sentenced to three years in prison with four years of probation. (*Id*.)

15 Petitioner served approximately 34 months of his sentence. (Pet., ¶ 16.)

16     On February 9, 2018, Petitioner was released by the Idaho Department of Corrections

17 directly into ICE custody. (Berg Decl., ¶ 6.) ICE served Petitioner with a Notice to Appear

18 ("NTA"), charging him with removability pursuant to 8 U.S.C. §§ 1227(a)(2)(A)(iii) (conviction

19 for an aggravated felony) and 1227(a)(2)(B)(i) (conviction for a controlled substance offense).

20
21 [1] Petitioner has also filed a notice of intent to file a surreply and a proposed surreply. (Dkt. # 19.) Petitioner indicates therein that he seeks to submit his surreply "for the sole purpose of correcting Respondents' mischaracterization of Petitioner's constitutional claims for relief." (*Id*.) Pursuant to Local Civil Rule (LCR) 7(g)(2), a surreply may be filed only for the purpose of requesting to strike material
22 contained in a reply brief. The rule makes clear that a surreply filed for any other reason will not be considered. *Id*. As Petitioner's surreply was filed for a purpose other than that permitted by LCR 7(g)(2),
23 the brief will not be considered.

REPORT AND RECOMMENDATION
PAGE - 2

(*Id.*, ¶ 7; Lambert Decl., Ex. C.) ICE also served Petitioner with a Notice of Custody Determination informing him that he would be detained pending a final administrative determination in his removal proceedings. (Lambert Decl., Ex. D.)

In July 2018, an immigration judge ("IJ") sustained the charges of removability. (*See* Lambert Decl., Ex. F at 2; Berg Decl., ¶ 10.) At a subsequent hearing on August 14, 2018, Petitioner waived his right to apply for relief from removal and the IJ ordered him removed to Mexico. (*See* Lambert Decl., Exs. E-F; Berg Decl., ¶ 11.) Petitioner appealed the IJ's decision to the Board of Immigration Appeals ("BIA") and, on January 18, 2019, the BIA sustained the appeal and terminated Petitioner's removal proceedings, and Petitioner was released from custody (Lambert Decl., Ex. G; Berg Decl., ¶ 12.)

The Department of Homeland Security ("DHS") thereafter filed with the BIA a motion to reconsider its decision terminating Petitioner's removal proceedings. (Dkt. # 1-3, Declaration of Katherine Evans (Evans Decl.), Ex. 8.) On January 16, 2020, the BIA granted DHS's motion, reinstated Petitioner's removal proceedings, and remanded the case to the IJ for further development of the record. (Evans Decl., Ex. 10; Lambert Decl., Ex. H.) Petitioner thereafter filed a motion with the BIA seeking reconsideration of its grant of DHS's motion to reconsider. (Evans Decl., Ex. 12.) Petitioner was taken back into ICE custody on February 26, 2020, and he was once again served with a Notice of Custody Determination informing him that he would be detained pending a final administrative determination in his removal proceedings. (*See* Lambert Decl., Exs. I-J; Berg Decl., ¶ 15.)

On June 5, 2020, Petitioner filed a motion for a custody redetermination hearing pursuant to *Matter of Joseph*, 22 I. & N. Dec. 799 (BIA 1999). (Evans Decl., Ex. 16.) Petitioner argued therein that DHS was unlikely to prevail on the charges of removability pursuant to which he

REPORT AND RECOMMENDATION
PAGE - 3

was being mandatorily detained, and that he should therefore be released from custody on his own recognizance or he should be afforded a bond hearing. (*See id.*) On June 9, 2020, the IJ denied Petitioner's motion, rejecting Petitioner's argument that he was not subject to mandatory detention and concluding that he was ineligible for bond. (*Id.*, Ex. 18; Lambert Decl., Ex. K.) Petitioner appealed this decision to the BIA. (Evans Decl., Ex. 19.)

On April 9, 2021, the BIA issued decisions on Petitioner's motion for reconsideration and on his appeal from the IJ's denial of his motion for a custody redetermination. (Dkt. # 22, Exs. A-B.) The BIA first granted Petitioner's motion to reconsider and, upon reconsideration, dismissed Petitioner's appeal of the IJ's July 2018 decision sustaining the charges of removability and denying Petitioner's motion to terminate the removal proceedings. (*Id.*, Ex. A.) The BIA then denied Petitioner's appeal from the IJ's June 2020 denial of his motion for a custody redetermination as moot because a final order had been entered in his case. (*Id.*, Ex. B.) Petitioner filed a petition for review of the BIA's final order of removal with the United States Court of Appeals for the Ninth Circuit on April 12, 2021, and the Ninth Circuit issued a temporary stay of removal. (Dkt. # 23 at 1 and Ex. A.) As noted above, this Court held oral argument in this matter on April 14, 2021, and this matter is now ripe for review.

### III.   DISCUSSION

Petitioner asserts in his federal habeas petition that he has been unlawfully detained for over two years under 8 U.S.C. § 1226(c). (Pet. at 2.) Petitioner claims that his categorical, prolonged, no-bond detention violates his rights under the Due Process and Excessive Bail Clauses of the United States Constitution. (*Id.*) Petitioner requests that the Court issue a writ of habeas corpus ordering his release from custody or, in the alternative, ordering an individualized bond hearing at which the Government bears the burden of establishing that his continued

REPORT AND RECOMMENDATION
PAGE - 4

detention is justified. (*Id*. at 2-3.) The Government, in its return memorandum and motion to dismiss, argues that Petitioner's detention is lawful pursuant to § 1226(c) and comports with due process.[2] (*See* Mot. at 2.) The Government further argues that Petitioner failed to exhaust his administrative remedies, and that he fails to state a viable Eighth Amendment claim based on the Excessive Bail Clause.[3] (*See id*.)

### A.  Immigration Law Framework/Statutory Framework

Title 8 U.S.C. § 1226 provides the framework for the arrest, detention, and release of non-citizens who are in removal proceedings. Section 1226(a) grants DHS the discretionary authority to determine whether a non-citizen should be detained, released on bond, or released on conditional parole pending the completion of removal proceedings, unless the non-citizen falls within one of the categories of criminals described in § 1226(c), for whom detention is mandatory until removal proceedings have concluded. 8 U.S.C. § 1226; *Jennings v. Rodriguez*, 138 S. Ct. 830, 846-48 (2018). Section 1226(c) includes any non-citizen who "is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the [non-citizen] has been sentenced to a term of imprisonment of at least 1 year." 8 U.S.C. § 1226(c)(1)(C).

There is no dispute that at the time Petitioner filed his petition he was being detained pursuant to § 1226(c). Because Petitioner's removal proceedings recently became administratively final, the Court asked the parties at oral argument to weigh in on the question of

---

[2] The Government argues preliminarily that the Court should strike the excess pages of Petitioner's 59-page supporting memorandum because LCR 7(e)(3) limits briefs to 24 pages. (Mot. at 3.) Petitioner correctly points out that, pursuant to LCR 100, federal habeas petitions are not subject to LCR 7(e) and that his petition is therefore exempt from the page limits set forth in that rule. (Resp. at 3.) While the Court concurs with the Government's suggestion that Petitioner's brief is unnecessarily long and complicates what is a relatively straightforward federal habeas matter, the Court will allow the memorandum to stand as filed.

[3] The Government withdrew their exhaustion argument at oral argument given that the BIA had by that time resolved Petitioner's administrative appeals.

REPORT AND RECOMMENDATION
PAGE - 5

1  whether the change in the status of Petitioner's removal proceedings altered the statutory

2  provision governing his detention. The Government argued that Petitioner's detention continues

3  to be governed by § 1226(c). Petitioner argued that his detention is now governed by § 1226(a),

4  not § 1226(c), because his removal order is now administratively final.

5     Petitioner based his argument on the Ninth Circuit's decision in *Casas-Castrillon v.*

6  *Department of Homeland Security*, 535 F.3d 942 (9th Cir. 2008), wherein the Court held that

7  once a removal order becomes administratively final, the statutory authority to detain a criminal

8  non-citizen awaiting judicial review of his final order of removal shifts from § 1226(c) to

9  § 1226(a). *Id*. at 948. Petitioner, however, acknowledged in making this argument that the

10 undersigned has previously concluded that *Casas-Castrillon* no longer remains good law in light

11 of the Supreme Court's decision in *Jennings* because the two cases are clearly irreconcilable. *See*

12 *Djelassi v. ICE Field Office Director*, 434 F.Supp.3d 917, 927-28 (W.D. Wash. 2020) (Martinez,

13 C.J., adopting R. & R. of Peterson, M.J., concluding that *Casas-Castrillon* is clearly

14 irreconcilable with *Jennings*); *Muhamd v. ICE Field Office Director*, No. 20-605-RAJ, Dkt. 8

15 (W.D. Wash. Sept. 14, 2020) (R. & R. of Peterson, M.J., same).[4]

16    The viability of *Casas-Castrillon* remains an open question, though the issue is now

17 pending before the Ninth Circuit in *Avilez v. Barr*, Ninth Circuit Case No. 20-16142, and will

18 hopefully be conclusively resolved in that proceeding. However, at this juncture, this Court is not

19 persuaded that reconsideration of its prior decisions on the issue is warranted, and the Court

20

---

21 [4] Judges in the Northern District of California have reached the opposite conclusion, finding that *Jennings* and *Casas-Castrillon* are not clearly irreconcilable. *See*, *e.g.*, *Avilez v. Barr*, No. 19-8296, 2020 WL
22 1704456, at *2-3 (N.D. Cal. Apr. 8, 2020), *appeal pending*, No. 20-16142 (9th Cir.); *Birru v. Barr*, No. 20-1285, 2020 WL 1905581, at *7-8 (N.D. Cal. Apr. 17, 2020) (same); *Singh v. Barr*, No 20-2346, 2020
23 WL 1929366, at *6-7 (N.D. Cal. Apr. 20, 2020) (same).

REPORT AND RECOMMENDATION
PAGE - 6

therefore concludes that Petitioner's detention continues to be governed by § 1226(c).[5] The Court therefore turns to Petitioner's argument that his prolonged, no-bond detention violates his due process rights.

B.  **Due Process**

In *Demore v. Kim*, 538 U.S. 510 (2003), the Supreme Court rejected a due process challenge to § 1226(c). The Supreme Court explained that Congress drafted § 1226(c) to respond to the high rates of crime and flight by removable noncitizens convicted of certain crimes and held that "the Government may constitutionally detain deportable [noncitizens] during the limited period necessary for their removal proceedings." *Id.* at 518-21, 526. In so holding, the Supreme Court stressed the "brief" nature of the mandatory detention under § 1226(c), which has "a definite termination point" that, in the vast majority of cases, resulted in detention of less than about five months. *Id.* at 529-30. Justice Kennedy's concurring opinion, which created the majority, reasoned that under the Due Process Clause, a noncitizen could be entitled to "an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." *Id.* at 532.

Since *Demore*, the Ninth Circuit has expressed "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that those who founded our democracy precisely to protect against the government's arbitrary deprivation of liberty would have thought so." *Rodriguez v. Marin* ("*Rodriguez IV*"), 909 F.3d 252, 256 (9th Cir. 2018). Overwhelmingly, district courts that have considered the constitutionality of prolonged

---

[5] The Government represented to the Court at oral argument that because the viability of *Casas-Castrillon* is an open question, immigration judges are still granting so-called "*Casas*" hearings and that Petitioner is now eligible to request one. The Government noted that this would provide Petitioner at least some of the relief he requests in this action. Nothing in the record suggests that Petitioner has requested such a hearing from the immigration court.

REPORT AND RECOMMENDATION
PAGE - 7

mandatory detention—including the undersigned and other judges in this District—"agree that prolonged mandatory detention pending removal proceedings, without a bond hearing, 'will—at some point—violate the right to due process.'" *Martinez v. Clark*, No. C18-1669-RAJ-MAT, 2019 WL 5968089, at *6 (W.D. Wash. May 23, 2019), *R. & R. adopted*, 2019 WL 5962685 (W.D. Wash. Nov. 13, 2019) (quoting *Sajous v. Decker*, No. C18-2447, 2018 WL 2357266, at *8 (S.D.N.Y. May 23, 2018), and collecting cases); *see also Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1106 (W.D. Wash. 2019) (Robart, J.) ("[U]nreasonably prolonged detention under [8 U.S.C.] § 1225(b) without a bond hearing violates due process."); *Djelassi*, 434 F. Supp. 3d at 923-24 (granting habeas petition and ordering bond hearing for noncitizen whose mandatory detention had become unreasonably prolonged).

In cases involving § 1226(c), judges in this District have utilized the test articulated in *Martinez*, 2019 WL 5968089, at *6-7, to determine whether prolonged mandatory detention has become unreasonable. Under the *Martinez* test the Court considers the following factors:

> (1) the total length of detention to date; (2) the likely duration of future detention; (3) whether the detention will exceed the time the petitioner spent in prison for the crime that made him [or her] removable; (4) the nature of the crimes the petitioner committed; (5) the conditions of detention; (6) delays in the removal proceedings caused by the petitioner; (7) delays in the removal proceedings caused by the government; and (8) the likelihood that the removal proceedings will result in a final order of removal.

*Id.* at *9 (citing, *inter alia*, *Cabral v. Decker*, 331 F. Supp. 3d 255, 261 (S.D.N.Y. 2018)). These factors are derived from the Supreme Court's decisions in *Demore* and *Zadvydas v. Davis*, 533 U.S. 678 (2001), and pre-*Jennings* circuit court cases holding, as a matter of constitutional avoidance, that § 1226(c) implicitly authorizes detention for only a reasonable amount of time. *See Reid v. Donelan*, 819 F.3d 486, 494 (1st Cir. 2016), *vacated in light of Jennings*, 2018 WL 4000993 (1st Cir. May 11, 2018); *Diop v. ICE/Homeland Sec.*, 656 F.3d 221, 222-23 (3d Cir.

2011), *abrogated by Jennings*, 138 S. Ct. 830; *Ly v. Hansen*, 351 F.3d 263, 269-70 (6th Cir. 2003), *abrogated by Jennings*, 138 S. Ct. 830; *Sopo v. U.S. Att'y Gen.*, 825 F.3d 1199 (11th Cir. 2016), *vacated as moot*, 890 F.3d 952 (11th Cir. 2018).[6] Consistent with the prior decisions of judges in this District, the Court applies the *Martinez* factors to assess whether Petitioner's § 1226(c) detention has become unreasonable.

          1.     *Length of Detention to Date*

The length of detention is the most important factor. *See, e.g.*, *Martinez*, 2019 WL 5968089, at *9; *Sajous*, 2018 WL 2357266, at *10 (citing *Zadvydas*, *Sopo*, and *Diop*). The longer mandatory detention continues beyond the "brief" period authorized in *Demore*, the harder it is to justify. *See, e.g.*, *Martinez*, 2019 WL 5968089, at *9 (nearly 13-month detention weighed in favor of granting a bond hearing); *Liban M.J. v. Sec'y of Dep't of Homeland Sec.*, 367 F. Supp. 3d 959, 963-64 (D. Minn. 2019) ("Although there is no bright-line rule for what constitutes a reasonable length of detention, Petitioner's [12-month] detention has lasted beyond the 'brief' period assumed in *Demore*."); *Sajous*, 2018 WL 2357266, at *10 ("[D]etention that has lasted longer than six months is more likely to be 'unreasonable', and thus contrary to due process, than detention of less than six months.").

Petitioner has served two periods in ICE custody in relation to his removal proceedings. Petitioner initially entered ICE custody on February 9, 2018 upon his release from the Idaho Department of Corrections, and he was released from ICE custody on January 18, 2019 when the

---

[6] Both parties also analyze Petitioner's detention under the three-factor test outlined in *Mathews v. Eldridge*, 424 U.S. 319 (1976), which "requires considering (1) the private interest affected, (2) the government's interest, and (3) the value added by additional or substitute procedural safeguards in the situation before the court." *Banda*, 385 F. Supp. 3d at 1106 (citing *Mathews*, 424 U.S. at 334). For the reasons explained by Judge Robart in *Banda*, the Court declines to apply the *Mathews* test in this case. *See id.* at 1106-07.

REPORT AND RECOMMENDATION
PAGE - 9

BIA terminated his removal proceedings. Petitioner was taken back into ICE custody on February 26, 2020 after the BIA reinstated his removal proceedings and he has remained in custody since that time.

Petitioner argues that the Court should aggregate his two periods of custody for purposes of its constitutional analysis. (Mem. at 28-29.) However, Petitioner has provided no relevant authority to support the proposition that his two distinct periods of custody, separated by over a year during which no removal proceedings were even pending, are properly aggregated for purposes of determining whether Petitioner's detention violates due process. This Court therefore considers only Petitioner's current period of custody. Even considering only Petitioner's most recent period of confinement, which has now extended to over 14 months, this factor weighs in Petitioner's favor.

### 2. Likely Duration of Future Detention

The Court next "considers how long the detention is likely to continue absent judicial intervention; in other words, the anticipated duration of all removal proceedings including administrative and judicial appeals." *Martinez*, 2019 WL 5968089, at *9. As noted above, Petitioner's administrative proceedings have now concluded and he only recently filed a petition for review with the Ninth Circuit. According to the Ninth Circuit's public website, oral argument in a civil case may not be set for 12-20 months from the time the notice of appeal was filed; following argument, the Court of Appeals may take 3 months to a year to decide the case. *See* U.S. Court of Appeals for the Ninth Circuit, Frequently Asked Questions, www.ca9.uscourts.gov/content/faq.php (last accessed 4/29/2021). It thus appears that Petitioner could potentially be facing two years or more of additional time in custody. This factor therefore weighs in Petitioner's favor as well.

REPORT AND RECOMMENDATION
PAGE - 10

3.    *Criminal History*

Under the third and fourth factors, the Court reviews the length of detention compared to Petitioner's criminal sentence and the nature of his crime. *Martinez*, 2019 WL 5968089, at *9; *Cabral*, 331 F. Supp. 3d at 262. The relevance of these factors is that they are suggestive of whether the detainee is a danger to the community or a risk of flight such that a bond hearing would be futile. *See Cabral*, 331 F. Supp. 3d at 262. Petitioner was sentenced to 36 months in prison for drug related felonies and he was released after serving approximately 34 months in prison. Given that Petitioner has already been in immigration detention for over 14 months, it is possible his detention will match or exceed the length of time he spent in prison.

While it must be acknowledged that Petitioner committed serious, though non-violent, felonies, it is notable that during the 13 months Petitioner was out of custody between his release from ICE custody upon the initial termination of his removal proceedings and his surrender to ICE custody when the proceedings were reinstated, Petitioner did not commit any further crimes or otherwise endanger the public. Thus, in this Court's view, it would not be futile to grant Petitioner a bond hearing. Nonetheless, this Court concludes that these factors weigh slightly in favor of the Government.

4.    *Conditions of Detention*

Under the fifth factor, the Court considers the conditions of Petitioner's detention at the facility where he is currently detained. *Martinez*, 2019 WL 5968089, at *9. "The more that the conditions under which the [non-citizen] is being held resemble penal confinement, the stronger [the] argument that he is entitled to a bond hearing." *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 860 (D. Minn. 2019) (quoted source omitted). Petitioner argues that there is no significant difference between the conditions at NWIPC and those he faced later in his prison sentence when

he was confined at a medium security facility.[7] Petitioner, in his memorandum in support of his petition, cites to the food, restrictions on privacy and autonomy, and a focus on punitive discipline which he asserts make his current confinement indistinguishable from the conditions in the medium custody prison facility.[8] (Mem. at 32.) Petitioner also argues that the Court should consider the risk to his health from being confined in close contact with other detainees during the COVID-19 pandemic. (*Id*. at 32-33.)

Petitioner's discussion regarding the risk of transmission of COVID-19 at immigration detention centers is generic in nature (*see id*. at 19-21) and, as the Government properly notes, Petitioner sets forth no facts particular to his confinement in relation to his claim that NWIPC is dangerous due to COVID-19 (Mot. at 10 n.1). The Government does, however, dispute, Petitioner's assertion that the conditions of his confinement at NWIPC are similar in nature to those he experienced in a medium security prison facility. Accordingly, this factor weighs in Petitioner's favor.

### 5.   *Delays in Removal Proceedings*

Under the sixth and seventh factors, the Court considers "the nature and extent of any delays in the removal proceedings caused by the petitioner and the government, respectively." *Martinez*, 2019 WL 5968089, at *10. "Petitioner is entitled to raise legitimate defenses to removal . . . and such challenges to his removal cannot undermine his claim that detention has

---

[7] Petitioner explains that for the first two years of his state prison sentence he was confined at a lower security work camp where he was permitted to spend time in the community and earn money for his family. (Dkt. # 1-26, Declaration of Luis Juarez (Juarez Decl.), ¶¶ 12-15.) When ICE placed an immigration detainer on Petitioner approximately 10 months before the end of his sentence, he was transferred to a medium security facility. (*Id*., ¶ 15.)

[8] Petitioner refers the Court to ¶ 80 of his declaration (dkt. # 1-26) to support his assertions regarding the similarity of his conditions of confinement at NWIPC to those he experienced in prison. However, the Court was unable to locate in ¶ 80, or anyplace else in Petitioner's declaration, any statements to this effect.

REPORT AND RECOMMENDATION
PAGE - 12

become unreasonable." *Liban M.J.*, 367 F. Supp. 3d at 665 (citing *Hernandez v. Decker*, No. 18-5026, 2018 WL 3579108, at *9 (S.D.N.Y. July 25, 2018) ("[T]he mere fact that a noncitizen opposes his removal is insufficient to defeat a finding of unreasonably prolonged detention, especially where the Government fails to distinguish between bona fide and frivolous arguments in opposition.")).

Courts, however, should be "sensitive to the possibility that dilatory tactics by the removable [non-citizen] may serve not only to put off the final day of deportation, but also to compel a determination that the [non-citizen] must be released because of the length of his [or her] incarceration." *Ly*, 351 F.3d at 272; *see also Sopo*, 825 F.3d at 1218 ("Evidence that the [non-citizen] acted in bad faith or sought to deliberately slow the proceedings in hopes of obtaining release cuts against the [non-citizen]."). Thus, this factor weighs against finding detention unreasonable when a non-citizen "has 'substantially prolonged his stay by abusing the processes provided,'" but not when he "simply made use of the statutorily permitted appeals process." *Hechavarria v. Sessions*, 891 F.3d 49, 56 n.6 (2d Cir. 2018) (quoting *Nken v. Holder*, 556 U.S. 418, 436 (2009)); *see also Campbell v. Barr*, 387 F. Supp. 3d 286, 297 n.7 (W.D.N.Y. 2019). With respect to the government, "If immigration officials have caused delay, it weighs in favor of finding continued detention unreasonable. . . . Continued detention will also appear more unreasonable when the delay in the proceedings was caused by the immigration court or other non-ICE government officials." *Sajous*, 2018 WL 2357266, at *11 (citing *Demore* and *Reid*).

Neither party alleges that the other has engaged in deliberate delay tactics, though Petitioner argues that the Government has nonetheless been the source of all major delays in his removal proceedings. (Mem. at 35.) Petitioner cites to the fact that DHS chose to file a motion to

REPORT AND RECOMMENDATION
PAGE - 13

reconsider after the BIA initially ruled in Petitioner's favor and terminated the removal proceedings, and to the fact that the Government chose to re-detain Petitioner even though he did not pose a risk of flight or danger. (*Id*.) Just as Petitioner is permitted to raise legitimate defenses to removal without undermining his claim that his detention has become unreasonable, so to is the Government permitted to raise legitimate arguments in support of removability without penalty. Moreover, once Petitioner's removal proceedings were reinstated, the Government was required by statute to re-detain him because he falls into the category of non-citizens whose detention is mandatory under § 1226(c). Thus, Petitioner's criticisms of the Government's conduct in these respects are not well taken.

However, it cannot be disputed that it took a significant period of time for the BIA to resolve Petitioner's appeals. Although there is no evidence that the delay in resolving Petitioner's appeals was the result of "intentional action on behalf of government officials, this delay is attributable to the Government." *Martinez*, 2019 WL 5968089, at *10. Accordingly, the sixth and seventh factors weigh in Petitioner's favor.

    6.  *Likelihood Removal Proceedings Will Result in a Final Order of Removal*

Finally, the Court considers "the likelihood that the removal proceedings will result in a final order of removal." *Liban M.J.*, 367 F. Supp. 3d at 965. "In other words, the Court considers whether the noncitizen has asserted any defenses to removal." *Martinez*, 2019 WL 5968089, at *10; *Sajous*, 2018 WL 2357266, at *11. "Where a noncitizen has not asserted any grounds for relief from removal, presumably the noncitizen will be removed from the United States, and continued detention will at least marginally serve the purpose of detention, namely assuring the noncitizen is removed as ordered." *Martinez*, 2019 WL 5968089, at *10 (citing *Sajous* and *Demore*). "But where a noncitizen has asserted a good faith challenge to removal, 'the

categorical nature of the detention will become increasingly unreasonable.'" *Id.* (quoting *Reid*, 819 F.3d at 400-500).

Petitioner argues that this factor favors him because the BIA once terminated his removal proceedings, thus vindicating his claims against removability and demonstrating that his challenge is not frivolous. (Mem. at 36.) The Government counters that though Petitioner initially succeeded in challenging the bases for his removability before the BIA, the BIA later reversed this decision and reinstated Petitioner's removal proceedings. (Mot. at 11.) And, indeed, the BIA has now conclusively rejected Petitioner's challenge to removability. Petitioner does, however, have a petition for review pending before the Ninth Circuit and this Court is unwilling to conclude, based on the record before it, that the appeal is frivolous or that Petitioner will not ultimately prevail. The Court therefore finds this factor neutral.

       7.     *Weighing the Factors*

As discussed above, five of the eight factors weigh in Petitioner's favor, two factors weigh in the Government's favor, and one factor is neutral. The Court thus concludes that Petitioner's prolonged mandatory detention without a bond hearing has become unreasonable and therefore violates due process.

**C.**    **Relief**

As a remedy, Petitioner asks the Court to order his immediate release or, in the alternative, direct that he receive an individualized bond hearing. There is no authority supporting Petitioner's claim that he is entitled to an order of release. Petitioner, in his memorandum in support of his petition, argues that this Court has authority to order his immediate release, and he maintains that a variety of district courts have granted habeas petitions raising challenges to the conditions of immigration detention by ordering the immediate release

of non-citizens. (*See* Mem. at 55-56.) Petitioner cites to a number of cases that purportedly support this argument. (*Id*. at 56.) However, this Court's review of the cited cases reveals that in none of the cases was the detainee granted release by the court, thus undermining Petitioner's claim to the contrary. *See Bryston v. Hoover*, 456 F. Supp. 3d 635 (M.D. Pa. 2020); *Camacho Lopez v. Lowe*, 452 F. Supp. 3d 150 (M.D. Pa. 2020), *as amended* (Apr. 9, 2020); *Basri v. Barr*, 2020 WL 5036063, at * 4 (D. Colo, May 11, 2020).[9]

This Court concludes that the proper remedy in this instance is a bond hearing that comports with the requirements of *Singh v. Holder*, 638 F.3d 1196, 1208 (9th Cir. 2011). *See, e.g.*, *Banda*, F. Supp. 3d at 1120-21 (requiring IJ to apply the procedural requirements of *Singh*); *Djelassi*, 434 F. Supp. 3d at 923-24 (same); *Martinez*, 2019 WL 5968089, at *11 (same and collecting cases); *Aleman Gonzalez v. Barr*, 955 F.3d 762, 781 (9th Cir. 2020) (holding that *Jennings* did not undercut the constitutional due process holding in *Singh*).[10]

## IV.   CONCLUSION

For the foregoing reasons, this Court recommends that both the Government's motion to dismiss and Petitioner's habeas petition be GRANTED in part and DENIED in part. Specifically, Petitioner's request for release should be DENIED, but he should be GRANTED a bond hearing that comports with the procedural requirements of *Singh* within 30 days of an order on this Report and Recommendation. A proposed order accompanies this Report and Recommendation.

---

[9] Petitioner cites to one additional case for purposes of comparison wherein an appellate court ordered a detainee be released from custody pending appeal pursuant to Fed. R. App. P. 23(b). *Nadarajah v. Gonzales*, 433 F.3d 1069 (9th Cir. 2006). That case has no relevance here.

[10] Petitioner raises an assortment of additional due process claims and an Eighth Amendment excessive bail claim in his petition. Petitioner withdrew one of his due process claims at oral argument, that pertaining to the constitutional adequacy of the *Matter of Joseph* standard. (*See* Mem. at 48-51.) The Court has not addressed Petitioner's remaining claims given its conclusion that Petitioner's prolonged detention violates due process and that he is therefore entitled to a bond hearing. Resolution of Petitioner's remaining claims would have no practical effect on the outcome of this federal habeas action.

REPORT AND RECOMMENDATION
PAGE - 16

## V. OBJECTIONS

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **fourteen (14) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14) days** after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **May 21, 2021**.

DATED this 5th day of May, 2021.

MICHELLE L. PETERSON
\United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE - 17